IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV-F-05-0431 REC LJO |
| Plaintiff, | ORDER GRANTING UNITED STATES' MOTION FOR DEFAULT JUDGMENT, FINAL JUDGMENT, AND ORDER OF FORECLOSURE. |
| vs. | |
| GEORGE LOREN REED, Individually and as Trustee of the REED FAMILY TRUST; DUANE REED, Individually and as Trustee of the REED FAMILY TRUST; LIDCO INC.; and SHIRLEY LUNDY, | (Doc. 36) |
| Defendants. | |

On January 9, 2006, the Court heard the United States'
Motion for Default Judgment, Final Judgment, and Order of
Foreclosure (the "Motion").  Upon due consideration of the
written and oral arguments of the parties and the record herein,
the Court GRANTS the Motion as set forth herein.

**I.   Background**

In this action, the United States seeks to foreclose on
certain real property, which it identifies as Parcels 1, 2, and 3

1

1   and the adjoining parcels (the "Adjoining Parcels"), to satisfy

2   federal tax liability.

3       **A.   The Subject Property**

4       The parcels are described as follows:

5       Parcel No. 1:

6       All that portion of west 1/2 of the southeast 1/4 of
        the southeast 1/4 of section 10 Townsh[i]p 3 South,
7       Range 8 East, M.D.B. & M, which lies south of Lateral
        No. 7 of Modesto Irrigation District.

8       Excepting therefrom all that portion of the west 1/2 of
9       the southeast 1/4 of the southeast 1/4 bounded and
        particularly described as follows:

10
        Commencing at the southeast corner of the west 1/2 of
11      the southeast 1/4 of the southeast 1/4 of said section
        10, above Township and Range; thence running north
12      along the east line of said west 1/2 a distance of 20
        feet to the north side of county road known as Beckwith
13      Road to the point of beginning of this description;
        thence continuing north along the east line of said
14      west 1/2, a distance of 125 feet to a point; thence
        west and parallel to the south line of said southeast
15      1/4 of said section 10, a distance of 135 feet to a
        point; thence south and parallel to the east line of
16      the said west 1/2 of said southeast 1/4 of the
        southeast 1/4 of said Section 10, a distance of 125
17      feet to a point on the north line of said county road;
        thence east along the north line of said county road, a
18      distance of 135 feet to the point of beginning.

19      Also excepting therefrom all that portion of the west
        1/2 of the southeast 1/4 of the southeast 1/4 bounded
20      and particularly described as follows:

21      Commencing at the southeast corner of the west 1/2 of
        the southeast 1/4 of the southeast 1/4 of said section
22      10; thence north and along the east line of said west
        1/2 of the southeast 1/4 of the southeast 1/4 to the
23      north side of the county road (Beckwith Road); thence
        west and along the north line of said Beckwith Road, a
24      distance of 135 feet to the southwest corner of the
        property conveyed to Wood Colony Grange, No. 522 by
25      deed, recorded December 24, 1937, as instrument no.
        16207 and being the true pont of beginning of this
26      description; thence north and parallel to the east line

                                    2

of the west 1/2 of the southeast 1/4 of the southeast
1/4 of said section 10 and along the west line of said
Grange property 125 feet; thence continuing north and
parallel to the east line of the west 1/2 of the
southeast 1/4 of the southeast 1/4 of said section 10,
15 feet; thence west and parallel to the north line of
Beckwith Road 75 feet; thence south and parallel to the
east line of the west 1/2 of the southeast 1/4 of the
southeast 1/4 of section 10, 140 feet to a point in the
north line of said Beckwith Road; thence east and along
the north line of said Beckwith road, a distance of 75
feet to the true point of beginning of this
description.

Also exception therefrom all that portion of the west
1/2 of the southeast 1/4 of the southeast 1/4 bounded
and particularly described as follows:

Commencing at the southeast corner of the west 1/2 of
the southeast 1/4 of the southeast 1/4 of said section
10; thence north, on the east line of said west 1/2 of
the southeast 1/4 of the southeast 1/4 of section 10, a
distance of 145 feet to the northeast corner of the
property conveyed to George Raymond Reed and Gladys
Reed, husband and wife, by grand deed recorded in Book
2021 of official records, at page 165, Stanislaus
County Recorders Office, and the point of beginning of
this description; thence west parallel with the south
line of the southeast 1/4 of said section 10, a
distance of 135 feet; thence north parallel with the
east line
of said west 1/2 of the southeast 1/4 of the southeast 1/4
of said section 10, a distance of 100 feet; thence east,
parallel with the south line of the southeast 1/4 of said
section 10, a distance of 135 feet to the aforesaid east
line of the west 1/2 of the southeast 1/4 of the southeast
1/4 of said section 10; thence south, on said east line of
the west 1/2 of the southeast 1/4 of the southeast 1/4 of
section 10, a distance of 100 feet to the point of
beginning.

Also excepting therefrom parcel A, as shown on a parcel
map filed December 16, 1969 in Book 8 of parcel maps,
at page 3, Stanislaus County Recorder, being a portion
of the southeast 1/4 of the southeast 1/4 of Section
10, Township 3 south, Range 8 East, M.D.B. & M.

3

Parcel No. 2:

Parcel A:

All that portion of the west 1/2 of the southeast 1/4 of the southeast 1/4 bounded and particularly described as follows:

Commencing at the southeast corner of the west 1/2 of the southeast 1/4 of the southeast 1/4 of said Section 10, above township and range; thence running north along the east line of said west 1/2 a distance of 20 feet to the north side of county road known as Beckwith Road to the point of beginning of this description; thence continuing north along the east line of said west 1/2, a distance of 125 feet to a point; thence west and parallel to the south line of said southeast 1/4 of said Section 10, a distance of 135 feet to a point; thence south and parallel to the east line of the said west 1/2 of said southeast 1/4 of the southeast 1/4 of said Section 10, a distance of 125 feet to a point on the north line of said county road; thence east along the north line of said county road, a distance 135 feet to the point of beginning.

Parcel B:

All that portion of the west 1/2 of the southeast 1/4 of the southeast 1/4 bounded and particularly described as follows:

Commencing at the southeast corner of the west 1/2 of the southeast 1/4 of the southeast 1/4 of said Section 10; thence north, on the east line of said west 1/2 of the southeast 1/4 of the southeast 1/4 of Section 10, a distance of 145 feet to the northeast corner of the property conveyed to George Raymond Reed and Gladys Reed, husband and wife, by grant deed recorded in Book 2021 of Official Records, at page 165, Stanislaus County recorder's office, and the point of beginning of this description; thence west parallel with the south line of the southeast 1/4 of said Section 10, a distance of 135 feet; thence north parallel with the east line of said west 1/2 of the southeast 1/4 of the southeast 1/4 of said Section 10, a distance of 100 feet; thence east, parallel with the south line of the southeast 1/4 of said Section 10, a distance of 135 feet to the aforesaid east line of the west 1/2 of the southeast 1/4 of the southeast 1/4 of said Section 10, thence south, on said east line of the west 1/2 of the southeast 1/4 of the southeast 1/4 of Section 10, a

4

1   distance of 100 feet to the point of beginning.

2   Parcel No. 3:

3   The west 120 feet of the east 642 feet of the south 170
    feet of the southeast 1/4 of the southeast 1/4 of
4   Section 10, Township 3 south, Range 8 east M.D.B. & M.

5   Excepting therefrom the south 20 feet.

6   The Adjoining Parcels:

7   All that portion of the Southeast 1/4 of Section
    Township 3, South Range 8 East M.D.B. & M, as follows:
8
    Commencing at the Southeast corner of said Section 10;
9   thence North 20 feet to the North side of Beckwith
    Road; thence West along North side said road 642 feet
10  to the point of beginning; thence continuing along
    North side road 15.85 feet more or less; thence North
11  776 feet more or less to the South line of a canal;
    thence Southeast along South line canal 15.85 feet more
12  or less; thence South 776 feet or more or less to the
    point of beginning.
13
    EXCEPTING THEREFROM the North 450 feet.
14

15  Kane Decl. ¶ 3.

16  **B.    The Prior Actions**

17      In a previous action before this Court, United States v.

18  George Raymond Reed, Civ. No. F-88-106 EDP, the United States

19  secured money judgments against George Raymond Reed and Gladys

20  Reed (collectively the "Taxpayers") in the amount of $283,272.33,

21  plus penalties and interest since February 22, 1988.  Ham Decl.

22  Ex. A.  In those proceedings, the United States also secured a

23  money judgment against George Loren Reed in the amount of

24  $356,778.28, which it is not currently seeking to enforce.  Id.

25  On October 2, 1991, abstracts of these judgments were recorded

26  with the County Recorder's Office for Stanislaus County.  Ham

5

Decl. Exs. B, C & D.  As of September 15, 2003, George Raymond Reed and Gladys Reed remain indebted to the United States in the amounts of  $1,003,132.86 and $1,004,999.17, respectively.  Reece Decl. ¶¶ 6-7.

In the previous action, the Court found that the transfer of two parcels of land, Parcels 2 and 3,[1] was fraudulent and therefore a nullity with respect to the United States.  Ham Decl. Ex. A at 2.  On March 11, 1992, the Court allowed the United States to enforce its money judgments against the Taxpayers by foreclosing its federal tax liens on Parcels 2 and 3.  Ham Decl. Ex. F.  The foreclosure was not completed because of the Taxpayers' age and occupancy of the parcels and the poor real estate market at that time.  Reece Decl. ¶ 8.

On July 28, 2004, upon the deaths of the Taxpayers, the United States filed its motion for an amended order of foreclosure, seeking to enforce its money judgments against Parcels 2 and 3.  The United States has discovered Parcel 1 and the Additional Parcels that are held by the Reed Family Trust (the "Trust") or by George Raymond Reed.  Kane Decl. ¶¶ 3-4.  The Taxpayers issued three deeds of trust on March 23, 1987, and one deed of trust on April 29, 1992, each of which lists Shirley M.

---

[1]The naming of the parcels is different in the United States' briefs in this action from the Order and Decree of Foreclosure (the "Order and Decree") in the previous case.  Parcel 2 in this action is made up of the parcels referred to as Parcel 1 and Parcel 2 in the previous action.  Parcel 3 in this action is the same as Parcel 3 in the previous action.  Parcel 1 and the Adjoining Parcels in this action were recently discovered, and so they are not described in the previous Order and Decree.

Lundy, Duane C. Reed, and George L. Reed as beneficiaries.

**C.   This Action**

On March 31, 2005, the United States initiated this action. It seeks to enforce its money judgments against the Taxpayers against Parcels 1, 2 and 3 and the Adjoining Parcels (collectively the "Subject Property").  The suit does not name George Raymond Reed or Gladys Reed, as they are deceased.  The defendants in this action were George Loren Reed and Duane Reed, both individually and as trustees of the Reed Family Trust, Lidco, Inc. ("Lidco"), and Shirley Lundy.  On May 3, 2005, the United States filed its First Amended Complaint ("FAC").

On June 8, 2005, Lidco, which holds a judgment lien, entered into a stipulation with the United States dismissing Lidco from the action and establishing the relative priorities of their claims to the Subject Property.

On June 10, 2005, the Clerk of the Court entered a default as to Duane Reed and George Loren Reed.  On September 27, 2005, the Clerk entered a default as to Shirley Lundy.  On November 2, 2005, the United States filed a Motion for Default Judgment, Final Judgment, and Order of Foreclosure (the "Motion"), supported by declarations and exhibits.  On December 8, 2005, Duane Reed, George Loren Reed, and Shirley Lundy (collectively "Defendants") moved for an extension in order to seek counsel. On December 13, 2005, the Court continued the hearing until January 9, 2006.  Defendants did not give notice that they have obtained counsel, file any response to the Motion, or appear at

7

1    oral argument.

2    **II.  Discussion**

3         **A.  Legal Standards**

4         Rule 55 of the Federal Rules of Civil Procedure provides

5    that the Court may enter a default judgment "[w]hen a party

6    against whom a judgment for affirmative relief is sought has

7    failed to plead or otherwise defend . . . ."  A party must file

8    an answer or motion to dismiss within 20 days of service of the

9    summons and complaint.  Fed. R. Civ. P. 12.  Rule 55 provides

10   that default judgment may be granted to a party entitled to it by

11   either the Clerk or the Court.  In cases in which damages are not

12   for a "sum certain," a party must seek default through the Court

13   pursuant to Rule 55(b)(2).  Upon default, the allegations of a

14   well-pleaded complaint are taken as true.  <u>Adriana Int'l Corp. v.</u>

15   <u>Lewis & Co.</u>, 913 F.2d 1406, 1414 (9th Cir. 1990) (citing <u>Geddes</u>

16   <u>v. United Fin. Group</u>, 559 F.32d 557, 560 (9th Cir. 1977)).

17        **B.   Res Judicata Regarding the Taxpayers' Tax Liabilities**

18        The United States seeks an adjudication of the tax

19   liabilities of George Raymond Reed and Gladys Reed based on res

20   judicata.

21              Res judicata, or claim preclusion, bars
             claims that should have been raised and
22           resolved in earlier litigation between the
             same parties.  Generally, a claim is barred
23           under this doctrine if the earlier
             litigation:  (1) concerned the same claim as
24           the current action, (2) reached final
             judgment on the merits, and (3) involved the
25           same parties.

26

1   Communic'ns Telesystems Int'l v. Cal. Pub. Util. Comm'n, 196 F.3d

2   1011, 1017 (9th Cir. 1999) (citing Nordhorn v. Ladish Co., 9 F.3d

3   1402, 1404 (9th Cir. 1993)).   To determine whether a case

4   concerns the same claim as a previous action, the Ninth Circuit

5   primarily examines "'whether the two suits arise out of the same

6   transactional nucleus of fact,' though [it] also consider[s]

7   other factors  as necessary." United States v. Northrop Corp.,

8   147 F.3d 905, 910 (9th Cir. 1998) (quoting Costantini v. Trans

9   World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).   To

10  determine whether two events arise from the same transaction,

11  courts consider whether they are "related to the same set of

12  facts and whether they could conveniently be tried together."

13  Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension,

14  Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1429

15  (9th Cir. 1993) (quoting W. Sys., Inc. v. Ulloa, 958 F.2d 864,

16  870 (9th Cir. 1992)).   Other factors courts consider are "(1)

17  whether rights or interests established in the prior judgment

18  would be destroyed or impaired by prosecution of the second

19  action; (2) whether substantially the same evidence is presented

20  in the two actions; [and] (3) whether the two suits involve

21  infringement of the same right."  Costantini, 681 F.2d at 1201-02

22  (citing Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980)).

23  "In the tax context, once a taxpayer's liability for a particular

24  year is litigated, 'a judgment on the merits is res judicata as

25  to any subsequent proceeding involving the same claim and the

26  same tax year.'"  Baker v. IRS, 74 F.3d 906, 910 (9th Cir. 1996)

9

(quoting <u>Commissioner v. Sunnen</u>, 333 U.S. 591, 598, 68 S. Ct. 715, 92 L. Ed. 898 (1948)).

The Court, by its order of December 11, 1989, has already adjudged in the previous action that the Taxpayers' are liable to the United States in the amount of $283,272.33, plus interest and penalties since February 22, 1988.  Ham Decl. Ex. A at 2.  As of September 15, 2003, George Raymond Reed remains liable to the United States in the amount of $1,003,132.86, and Gladys Reed remains liable for $1,004,999.17.  Reece Decl. ¶¶ 6-7.  Reece Decl. ¶ 6.  The current proceedings are an effort to enforce a judgment on the same claims in the previous action.  The United States is free to enforce the earlier tax judgment at any time.  <u>See</u> <u>United States v. Overman</u>, 424 F.2d 1142, 1147 (9th Cir. 1970).

The Court's order of December 11, 1989, is res judicata as to the Taxpayers' tax liabilities in this action.  Accordingly, the Court finds that, as of September 15, 2003, George Raymond Reed remains indebted to the United States for outstanding federal tax liabilities in the amount of $1,003,132.86.  As of September 15, 2003, Gladys Reed remains indebted to the United States for outstanding federal tax liabilities in the amount of $1,004,999.17.

**C.   Collateral Estoppel Regarding the Fraudulent Conveyance of Parcels 2 and 3**

The United States asks the Court to find, based on Defendants' default, that George Loren Reed and Duane Reed

10

(collectively "Successors") are collaterally estopped from contesting the Court's finding that the Taxpayers fraudulently transferred Parcels 2 and 3 to the Trust.  "Offensive collateral estoppel" allows the plaintiff to foreclose the defendant from litigating an issue that it has already unsuccessfully litigated in an action with another party.  <u>Pena v. Gardner</u>, 976 F.2d 469, 472 (9th Cir. 1992).  Offensive collateral estoppel is appropriate only where

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."

<u>Id.</u>

In the previous action, the Court found that Parcels 2 and 3 were fraudulently conveyed.  Ham Decl. Ex. A at 2.  Consequently, the Court held that the transfers "void" and "of no effect, as to the rights of the United States."  <u>Id.</u>  The Taxpayers had an opportunity to fully and fairly litigate this issue because it was decided on a motion for summary judgment that Taxpayers opposed.

In determining whether the issue was actually litigated in those proceedings, the Court must determine whether Taxpayer substantially participated in the proceedings by engaging in "obstructive tactics" to protect their interests in the litigation.  <u>IRS v. Palmer (In re Palmer)</u>, 207 F.3d 566, 568 (9th

11

Cir. 2000) (citing <u>FDIC v. Daily (In re Daily)</u>, 47 F.3d 365, 368 (9th Cir. 1995)).  After reviewing the docket and file in <u>United States v. George Raymond Reed</u>, Civ. No. F-88-106 EDP, the Court concludes that the issue was actually litigated.  Taxpayers retained counsel, filed an answer to the complaint denying that the conveyances were fraudulent, and filed a memorandum of points and authorities and a statement of disputed facts in opposition to the motion for summary judgment.  Docket, <u>United States v. George Raymond Reed</u>, Civ. No. F-88-106 EDP.  The Taxpayers actually litigated the United States' claim that the conveyances of Parcels 2 and 3 were fraudulent.

The United States also must show that the persons against whom collateral estoppel is asserted, the Successors, are in privity with the Taxpayers.  The United States asserts that they are in privity with the Taxpayers because, as direct heirs, they were substituted as the new trustees of the Trust upon the Taxpayers' deaths.  FAC ¶¶ 6, 17-20.  "'Privity' . . . is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'"  <u>Headwaters Inc. v. U.S. Forest Serv.</u>, 399 F.3d 1047, 1052-53 (9th Cir. 2005).

The Court takes as true the United States' allegations that the Successors became trustees of the Trust upon Gladys Reed's death on July 26, 2002.  FAC ¶ 19.  As successor trustees, Successors necessarily have identical interests and an identical

12

relationship to the Subject Property as their predecessors did.
See First Nat'l Bank v. Ickes, 154 F.2d 851, 853 (D.C. Cir. 1946)
(successor fiduciary is in privity with predecessor); cf. Rives
v. Franklin Life Ins. Co., 792 F.2d 1324, 1329 (5th Cir. 1986)
(finding that based on the "well established rule" that "a
successor fiduciary of an estate is in privity with his
predecessor," the court's ruling against the current trustee
would be binding against a successor trustee).  Therefore,
Successors are in privity with Taxpayers.

Because all of the requirements for collateral estoppel are
met, the Court finds that Successors are collaterally estopped
from contesting the Court's findings in the previous action that
the conveyances of Parcels 2 and 3 to the Trust were fraudulent
and therefore a nullity with respect to the United States.

### D.   Default Judgment Regarding Parcel 1

The United States urges the Court to find that the
Taxpayers' transfer of Parcel 1 to themselves as trustees of the
Trust is a nullity with respect to the United States based on the
claims in its FAC.  The United States further alleges that George
Loren Reed and Duane Reed, as the Taxpayers only known direct
heirs, succeeded the Taxpayers as trustees of the Trust after
Taxpayers' deaths.  Because Defendants are in default, the Court
takes well-pleaded allegations in the FAC as true in analyzing
this claim.  See Adriana Int'l, 913 F.2d at 1414.

The United States claims that the transfer is a fraudulent

13

conveyance pursuant to California Civil Code sections 3439.04[2] and 3439.05.[3]   In the FAC, the United States claims that the conveyance of Parcel 1 "was made with the intent to hinder, delay, or defraud" creditors.  FAC ¶ 34.  This allegation establishes that the conveyance was fraudulent under section 3439.04, allowing the United States to avoid the transfer to the extent necessary to satisfy its claim.  See Cal. Civ. Code § 3439.07(a)(1).[4]  Accordingly, the purported transfer of Parcel

---

[2]Section 3439.04 provides, in relevant part,

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. . . .

[3]Section 3439.05 provides, in full,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[4]The United States also claims that the transfer of Parcel 1 is a nullity with respect to its claims on two other grounds:  (1) the Trust is the alter ego or nominee of the Taxpayers and (2) the Trust was a revocable trust under California law during the lifetimes of the taxpayers.  Because the transfer of Parcel 1 is invalid under California Civil Code sections 3439.04 and 3439.05, the Court need not decide the United States' alternative arguments.

14

1 from George Raymond Reed and Gladys Reed to the Trust is a
nullity with respect to the United States.

**E.   Default Judgment Regarding Deeds of Trust**

The United States seeks a default judgment that the deeds of
trust in favor of Shirley Lundy, George Loren Reed, and Duane
Reed against the Subject Property are fraudulent and do not
create any interest in the purported beneficiaries.  The FAC
alleges that the deeds of trust that encumber the Subject
Property were made to "hinder, delay, or defraud the present and
future creditors of George Raymond Reed, Gladys Reed, and George
Loren Reed, including the United States, in the collection of
debts lawfully due or to be due."  FAC ¶ 40.  Taking this
allegation as true, the encumbrances are fraudulent pursuant to
Civil Code section 3439.04.  Consequently, the deeds of trust are
a nullity with respect to the United States' claim.  See Cal.
Civ. Code § 3439.07(a)(1).

**F.   Current Ownership of the Property**

On October 2, 1991, abstracts of the judgement in the
previous action were recorded with the County Recorder's Office
for Stanislaus County against the Subject Property.  FAC ¶ 28.
Any interest in these parcels held by Taxpayers' heirs, by
intestacy or bequest, is subject to the United States' claim.
The Court takes as true the United States' allegations that the
Successors are the only persons who may claim any interest in
property nominally held by the Trust, including the Subject
Property.  FAC ¶ 19.  Additionally, Successors are the only heirs

of Taxpayers that would receive property formerly held by
Taxpayers, under applicable law.  Id. at ¶ 20.  The judgments
from the prior action continue to attach to the Adjoining Parcels
by virtue of George Raymond Reed's ownership.  The judgments
continue to attach to Parcels 1, 2, and 3, despite the purported
transfer to the Trust because the transfer was fraudulent, as
concluded above.

### G.   Lidco's Interest

Defendant Lidco is the judgement lien creditor under an
abstract of judgment recorded with the County Recorder's Office
for Stanislaus County on January 11, 1987, and renewed on October
29, 1996.  The United States and Lidco stipulate that Lidco's
judgment is senior to the United States' judgments.  Pursuant to
the stipulation, the proceeds from the judicial sale of the
Subject Property shall be distributed to Lidco to satisfy its
judgment lien before distribution to the United States to satisfy
the Taxpayers' federal tax liabilities.

### H.   Validity of the Tax Liens

The federal tax liens underlying the money judgments entered
against Taxpayers are valid.  The tax liens give the United
States an interest in the Subject Property.  Under 26 U.S.C.
sections 7402 and 7403, this Court may order the sale of the
property in question and the distribution of the proceeds.

**ACCORDINGLY:**

The federal tax liens underlying the money judgments are

16

hereby enforced against Parcels 1, 2, and 3 and the Adjoining Parcels, and all improvements, buildings, and appurtenances thereon or thereto (collectively the "Subject Property").  The Internal Revenue Service is authorized and directed to offer for public sale the Subject Property.  This final judgment and order shall act as a special writ of execution and no further orders or process from the Court shall be required.  The terms and conditions of sale shall comply with 28 U.S.C. sections 2001 and 2002 and Local Rule A-570, as follows:

1.   The Internal Revenue Service is authorized to have free access to the Subject Property and to take all actions necessary to preserve the Subject Property, including without limitation, retaining a locksmith or other person to change or install locks or other security devices on any part of the Subject Property, until the deed of the Subject Property is delivered to the ultimate purchaser.

2.   The sale shall be free and clear of the interests of George Loren Reed, Duane Reed, Shirley Lundy, and all other parties named in this case.

3.   The sale shall be subject to all laws, ordinances, and governmental regulations (including building and zoning ordinances), affecting the premises, and easements and restrictions of record, if any.

4.   The public sale of the Subject Property shall be held either at the courthouse of the county in which the

17

1          realty is located, or on the premises.

2     5.   The date and time for sale are to be announced by the

3          Internal Revenue Service.

4     6.   Notice of the sale shall be published once a week for

5          at least four (4) consecutive weeks before the sale in

6          at least one newspaper regularly issued and of general

7          circulation in Stanislaus County, where the realty is

8          situated, and at the discretion of the Internal Revenue

9          Service, by any other notice that it deems appropriate.

10         The notice shall contain a description of the Subject

11         Property and shall contain the essential terms and

12         conditions of sale in this Final Judgment and Order of

13         Foreclosure.

14    7.   A reasonable minimum bid shall be determined by the

15         United States.  If the minimum bid is not met or

16         exceeded, the Internal Revenue Service may, without

17         further permission of this Court, and under the terms

18         and conditions in this order of sale, hold a new public

19         sale, if necessary, and reduce the minimum bid.

20    8.   The successful bidder shall be required to deposit at

21         the time of sale with the Internal Revenue Service a

22         minimum of ten (10) percent of his or her bid, with the

23         deposit to be made by cashiers or certified check made

24         payable to "United States Treasury."  Before being

25         permitted to bid at the sale, bidders shall display to

26         the Internal Revenue Service proof that they are able

18

1   to comply with this requirement.  No bids will be
2   received from any person who has not presented proof
3   that, if they are the successful bidder, they can make
4   the deposit required by this judgment.

5   9.   The balance of the purchase price for the Subject
6   Property is to be paid to the Internal Revenue Service
7   by a certified or cashier's check payable to the
8   "United States Treasury" within sixty (60) days after
9   the date the bid is accepted.  If the bidder fails to
10   fulfill this requirement, the deposit shall be
11   forfeited and shall be applied to cover the expenses of
12   the sale, with any amount remaining to be applied to
13   the outstanding tax liability, and the Subject Property
14   shall be again offered for sale under the terms and
15   conditions of this order.  The United States may bid as
16   a creditor against its judgment without tender of cash.

17   10.   The sale of the Subject Property shall be subject to
18   confirmation by this Court as required by Local Rule A-
19   570.  Absent a written objection filed within three
20   days of the sale, or the purchaser's default, the sale
21   shall stand confirmed without any action by the Court.
22   On confirmation of the sale of the Subject Property,
23   and receipt of payment in full, the Internal Revenue
24   Service shall execute and deliver a Certificate of Sale
25   and Deed conveying the Subject Property to the
26   purchaser.  On confirmation of the sale, all interests

in, liens against, or claims to, the Subject Property
that are held or asserted by the plaintiff or the
defendants in this action are discharged and
extinguished.

11. The sale is ordered pursuant to 28 U.S.C. section 2001,
and is made without right of redemption.  Possession of
the property sold shall be yielded to the purchaser
upon the production of a copy of the Certificate of
Sale and deed.  If there is a refusal to so yield, a
Writ of Assistance may, without further notice, be
issued by the Clerk of this Court to compel delivery of
the Subject Property to the purchaser.

12. Until the sale date, George Loren Reed, Duane Reed, and
Shirley Lundy shall take all reasonable steps necessary
to preserve the Subject Property (including all
buildings, improvements, and fixtures) in its current
condition including, without limitation, maintaining
fire and casualty insurance policies on the property.
They shall not commit waste against the Subject
Property, nor shall they cause or permit anyone else to
do so.  They shall not do anything that tends to reduce
the value or marketability of the Subject Property, nor
shall they cause or permit anyone else to do so.  The
taxpayers and the defendants shall not record any
instruments, publish any notice, or take any other
action (such as running newspaper advertisements) that

20

1   may directly or indirectly tend to adversely affect the

2   value of the Subject Property or that may tend to deter

3   or discourage potential bidders from participating in

4   the public auction.

5   13.   George Loren Reed and any other persons occupying the

6   Subject Property shall leave the property permanently

7   within 30 days of the date of the Final Judgment and

8   Order of Foreclosure, unless the United States agrees

9   otherwise in writing.  Each shall take with them their

10   personal property, but leave all improvements,

11   buildings, fixtures, and appurtenances.  If any person

12   occupying the property fails or refuses to leave and

13   vacate the property by the time specified in this

14   order, the U.S. Marshal and his deputies and/or the

15   Internal Revenue Service are authorized and directed to

16   take all actions that are reasonably necessary to bring

17   about the ejectment of those persons.  If any person

18   fails or refuses to remove his or her personal property

19   from the property by the time specified herein, the

20   personal property remaining on the Subject Property is

21   deemed forfeited and abandoned.  The Internal Revenue

22   Service is authorized to remove and dispose of such

23   personal property in whatever manner the Internal

24   Revenue Service sees fit, including sale with the

25   proceeds applied first to the expenses of sale and the

26   remainder to the tax liabilities giving rise to the

1        lien upon which foreclosure is hereby ordered.

2     14.  After the sale is confirmed by this Court, the Internal

3        Revenue Service shall distribute the amount paid by the

4        purchaser as follows:

5        a.  First, the Internal Revenue Service

6        shall retain an amount sufficient to cover

7        the expenses of the sale, including an amount

8        sufficient to cover the expenses of any steps

9        taken to secure or maintain the Subject

10       Property pending sale and confirmation by the

11       Court;

12       b.  Second, to all taxes unpaid and matured that

13       are owed for real property taxes on the Subject

14       Property;

15       c.  Third, to all amounts owed under the judgment

16       lien held by Lidco, Inc.

17       d.  Fourth, the remainder to be applied towards George

18       Raymond Reed's and Gladys Reed's underlying federal tax

19       liabilities as reflected on the money judgments entered

20       against them (jointly and severally) on December 12,

21       1989, in the amount of $283,272.33, plus penalties and

22       interest since February 22, 1988.

23    15.  Any balance remaining after the above payments shall be

24       held by the Clerk pending further order of the Court.

25

26

1   IT IS SO ORDERED.

2   **Dated:  February 2, 2006**              **/s/ Robert E. Coyle**
    810ha4                                    UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26